IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICKY HALL, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 24-CV-404-JFJ |
| ADAM BIVENS, individually, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is Defendant Adam Bivens' ("Deputy Bivens") Motion to Dismiss. ECF No. 14. The parties have consented to a magistrate judge presiding over the case. ECF No. 19.

**I.      Factual Background**

The following facts alleged in the Complaint (ECF No. 2) are relevant to Deputy Bivens' individual liability.[1] Plaintiff Ricky A. Hall ("Plaintiff") is an individual residing in Collinsville, Oklahoma. Compl. ¶ 4. Deputy Bivens is a Deputy Sheriff for the Tulsa County Sheriff's Department. *Id.* ¶ 7. On September 5, 2022, Plaintiff learned that a male minor ("Minor") had sent an obscene photograph to his minor granddaughter, causing him to drive to the residence of the Minor in Collinsville, Oklahoma, to confront him. *Id.* ¶¶ 8-10.

Upon reaching that residence, Plaintiff discovered Minor had already been severely beaten by Plaintiff's son-in-law for sending the obscene photograph. *Id.* ¶¶ 10-11. Plaintiff called 911 to report the incident, and Deputy Bivens, among others, responded to the call at the residence. *Id.* ¶¶ 12-13. Plaintiff was asked to move his truck "a couple of trailers" away from Minor's trailer.

---

[1] Other defendants have been dismissed without prejudice, and portions of the Motion to Dismiss relating to those defendants have been denied as moot. ECF Nos. 24, 25. The Court does not address allegations or issues pertaining to those defendants.

*Id.* ¶ 14. Deputy Bivens spoke with both Minor and Plaintiff, and both advised Deputy Bivens that Plaintiff's son-in-law had beaten Minor. *Id.* ¶¶ 15-16.

At one point, Plaintiff told Deputy Bivens "something to the effect of 'I shoulda picked up that 2x4 and made toothpicks out of it . . . that's what I shoulda done.'" *Id.* ¶ 17 (ellipses in original). According to Plaintiff, "[a]t no time did [Plaintiff] actually threaten to hurt [Minor] or made any effort to hurt [Minor]." *Id.* Deputy Bivens left to speak with Minor, and upon his return, Deputy Bivens demanded that Plaintiff give him his son-in-law's telephone number. *Id.* ¶¶ 17-19. Plaintiff advised Deputy Bivens that he did not have his son-in-law's telephone number. *Id.* ¶ 20. Deputy Bivens then told Plaintiff to exit his truck and that he was "under arrest." *Id.*

After Plaintiff exited his truck, Deputy Bivens "forcefully grabbed [Plaintiff] and slammed him up against the bed of [Plaintiff's] truck," which was sufficient to "knock the wind" out of Plaintiff. *Id.* ¶ 21. When Plaintiff told Deputy Bivens to be careful because he had just had shoulder surgery, Deputy Bivens replied, "I don't give a f*ck about your shoulder." *Id.* Deputy Bivens then handcuffed Plaintiff so tightly that it caused "abrasions and scars" on Plaintiff's wrists. *Id.* Plaintiff complied with Deputy Bivens' commands at all times and never resisted arrest. *Id.* ¶ 22.

Plaintiff was transported to the Tulsa County Jail, where he was charged with the crime of "Threatening an Act of Violence in violation of Okla. Stat. tit. 21, § 1378(A)." *Id.* ¶ 23. That charge was dismissed six days later for "prosecutorial discretion." *Id. See also State of Oklahoma v. Hall*, No. CF-2022-3595 (Tulsa County) (docket sheet).[2] The charging statute of § 1378(A), which is stated on Plaintiff's criminal docket sheet, is inconsistent with the named charged offense of "Threatening an Act of Violence." Section 1378(A) is the felony offense of "attempt[ing],

---

[2] The Court may take judicial notice of Plaintiff's criminal docket sheet, which is in the public record. *See State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1226 n.7 (10th Cir. 2008).

2

conspir[ing], or endeavor[ing] to perform an act of violence." Section 1378(B) is the misdemeanor offense of "threaten[ing] to perform an act of violence." The Complaint correctly identifies this inconsistency but does not attempt to explain it.

On September 3, 2024, Plaintiff filed this lawsuit against Deputy Bivens and other now-dismissed entities. Plaintiff asserts claims under 42 U.S.C. § 1983 against Deputy Bivens for (1) wrongful arrest and imprisonment/unreasonable seizure and (2) excessive force, both based on Deputy Bivens' violations of Plaintiff's constitutional rights under the Fourth Amendment.

## II.  Motion to Dismiss

Deputy Bivens seeks dismissal of the § 1983 claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Deputy Bivens is entitled to qualified immunity from suit. Deputy Bivens contends Plaintiff has failed to sufficiently allege that Deputy Bivens violated his Fourth Amendment rights. Alternatively, Deputy Bivens argues that, if those rights were violated, the rights were not clearly established at the time of the violations.

## III.  General Legal Standards – Qualified Immunity and Rule 12(b)(6)

Title 42 U.S.C. § 1983 provides in part that "[e]very person who, under color of any statute . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." When government defendants acting under color of law are sued under § 1983 in their individual capacities, they enjoy a qualified immunity from suit. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Specifically, "government officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (cleaned up). Qualified immunity "is an immunity from suit rather than a mere defense to

liability," and "it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 1161 (cleaned up).

The Tenth Circuit employs a two-part test to analyze qualified immunity at the Rule 12(b)(6) stage: (1) whether the alleged facts "make out a violation of a constitutional right;" and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* at 1164 (cleaned up). For a violation to be "clearly established," "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quotation omitted). "After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff" to satisfy the "heavy two-party burden." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (cleaned up). Courts have discretion to decide which prong should be addressed first. *Brown*, 662 F.3d at 1164.

In conducting this analysis, "all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Id.* at 1162 (cleaned up). A court must then determine whether these accepted facts state a "plausible" claim for relief:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1163 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up).

4

### IV. Wrongful Arrest and Imprisonment/Unreasonable Seizure

The Court holds: (1) Plaintiff's allegations make out a violation of Plaintiff's constitutional right to be free from unreasonable seizure; and (2) that right was clearly established at the time of the alleged violation.

#### A. Constitutional Violation

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In accordance with this protection, a law officer conducting a warrantless arrest is acting reasonably under the Fourth Amendment when probable cause exists to believe that a criminal offense has been or is being committed. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *A.M. v. Holmes*, 830 F.3d 1123, 1138 (10th Cir. 2016) (quoting *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008)).

In conducting this probable cause analysis for a § 1983 wrongful arrest claim, "courts examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Devenpeck*, 543 U.S. at 152 (cleaned up). The "arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Id.* at 153. That is, "his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.* "Ultimately, all that matters is whether the officer possessed knowledge of evidence that would provide probable cause to arrest the individual on *some* ground." *A.M.*, 830 F.3d at 1139 (cleaned up).

5

As explained above, the state court docket sheet creates confusion as to whether Plaintiff was arrested for and charged with the felony crime of Attempting, Conspiring, or Endeavoring to Perform an Act of Violence under Okla. Stat. tit. 21, § 1378(A), or the misdemeanor crime of Threatening to Perform an Act of Violence under Okla. Stat. tit. 21, § 1378(B). The docket sheet cites § 1378(A) and classifies the case as a "criminal felony," but also labels the crime as "Threatening an Act of Violence," which is a misdemeanor. For purposes of his motion to dismiss, Deputy Bivens does not attempt to show that he had probable cause to arrest Plaintiff for the felony crime of Attempting, Conspiring, or Endeavoring to Perform an Act of Violence, nor would any facts in the Complaint potentially support such arrest. Instead, Deputy Bivens argues he had probable cause to arrest Plaintiff for the misdemeanor crime of Threatening an Act of Violence under § 1378(B). Therefore, the Court focuses its probable cause analysis exclusively on § 1378(B).

Section 1378(B) provides:

> Any person who shall threaten to perform an act of violence involving or intended to involve serious bodily harm or death of another person shall be guilty of a misdemeanor, punishable upon conviction thereof by imprisonment in the county jail for a period of not more than six (6) months.

According to the Oklahoma Uniform Jury Instructions (Criminal) for § 1378(B), the elements for proving this crime are: (1) willfully; (2) threatening; (3) to perform an act of violence; and (4) involving/(intended to involve) (serious bodily harm to)/(the death of) another person. Vernon's Okla. Forms 2d, OUJI-CR 2-24. The element of "threatening" necessarily implies an intent to perform an act of violence at some time after the threatening words are spoken. *See generally Threat*, Black's Law Dictionary (12th ed. 2024) ("A communicated intent *to inflict* harm or loss on another or on another's property . . .") (emphasis added). This definition is consistent with the plain meaning of "threat" as a statement of intent to inflict harm in the future.

6

Plaintiff's factual allegations, taken as true, state a plausible claim that Deputy Bivens lacked probable cause to arrest Plaintiff for the misdemeanor crime of Threatening an Act of Violence under Okla. Stat. tit. 21, § 1378(B). In support of his argument on probable cause, Deputy Bivens relies exclusively on Plaintiff's comment of, "I shoulda picked up that 2x4 and made toothpicks out of it." However, this comment, construed in Plaintiff's favor, does not generally suggest a threat to perform an act of violence against Minor in the future. Instead, the comment suggests a statement of regret for failing to perform violence in the past, which is not a criminal act under the statute. The surrounding circumstances also do not support a finding of probable cause that Plaintiff was threatening Minor when he made this statement. According to the Complaint, Plaintiff contacted authorities to report the beating of Minor, which had taken place before Plaintiff arrived at Minor's residence. Plaintiff saw Minor's injuries, called 911 on Minor's behalf, and waited at the scene for the police to arrive. Plaintiff complied with all orders given by law enforcement upon their arrival, including moving his truck some distance away from Minor's home. Further, the comment was made when Plaintiff was physically distant from Minor and when Plaintiff posed no actual threat to Minor. Deputy Bivens was never advised, by Plaintiff or anyone else, that Plaintiff had beaten Minor or threatened to beat him in the future. Considering the circumstances surrounding Plaintiff's comment, combined with the alleged words spoken, Plaintiff has stated a plausible claim that no reasonable officer would consider such statement as a threat to perform violence against Minor at a future time.

Deputy Bivens argues that, in the Complaint, Plaintiff himself is not entirely sure what precise words he used, and it is possible Plaintiff used different words or made other threats that will be revealed in discovery. The Court will not speculate about other possible statements Plaintiff could have made. The Complaint's allegations of his words and the surrounding circumstances are adequately specific to establish a constitutional violation at the Rule 12(b)(6)

stage. *Cf. Walker v. Anderson*, No. 23-CV-8-CVE-JFJ, 2023 WL 3111699, at *4 (N.D. Okla. Apr. 26, 2023) (dismissing § 1983 claim where plaintiff failed to allege facts that supported a finding that sheriff's officer arrested him without probable cause).

Deputy Bivens further argues that Plaintiff "admits that he arguably threatened the [Minor]" by stating "something to the effect of" the words Plaintiff alleges in the Complaint. ECF No. 14 at 11. The Court disagrees that Plaintiff's factual allegations constitute any admission, for reasons already explained. Construing the statement and other factual circumstances favorably to Plaintiff, the Court finds Plaintiff expressed that he should have committed an act of violence in the past when he had an opportunity, or that he regretted his son-in-law's beating him to the scene. Plaintiff expressed those words at a time when Minor had already been beaten by another person, after Plaintiff had called 911 to assist Minor, after Plaintiff had complied with all police demands, and when he was physically distant from Minor. Under the totality of the circumstances, Plaintiff has sufficiently alleged facts that, if proven true, would show lack of probable cause for the arrest under § 1378(B).

Plaintiff's version of the facts, including his statement and conduct as stated in the Complaint may be challenged at later stages of the proceeding.[3] However, considering only the Complaint, the Court cannot conclude that Deputy Bivens had probable cause to arrest Plaintiff for any crime.[4]

---

[3] Deputy Bivens notes that an affidavit and finding of probable cause were filed in Plaintiff's criminal case on October 7, 2022, after the case was dismissed. While such affidavit may shed light on Deputy Bivens' version of events, there is no document attached to that docket entry, and the docket entry alone does not establish probable cause.

[4] Plaintiff suggests in the Complaint that he was, in fact, arrested because Deputy Bivens was frustrated with Plaintiff's stated inability to provide his son-in-law's telephone number. The Court does not consider this allegation as relevant to qualified immunity, as Deputy Bivens' subjective state of mind is not part of the analysis.

### B. Clearly Established Right

As to whether the law is clearly established at the time of the alleged violation, a § 1983 plaintiff asserting a claim for wrongful arrest based on absence of probable cause must show that "it would have been clear to a reasonable officer that probable cause was lacking under the circumstances." *Kaufman v. Higgs,* 697 F.3d 1297, 1300 (10th Cir. 2012) (quotation omitted). The officer "may be mistaken about whether he possesses *actual* probable cause to effect an arrest, so long as the officer's mistake is reasonable." *A.M.*, 830 F.3d at 1140. Some courts refer to this standard as "arguable probable cause." *See id.* (citing *Cortez v. McCauley*, 478 F.3d 1108, 1121 (10th Cir. 2007) (en banc)). *See also Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) ("Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists.") (citation omitted).

"The basic federal constitutional right of freedom from arrest without probable cause is undoubtedly clearly established by federal cases." *Kaufman*, 697 F.3d at 1300 (10th Cir. 2012) (citing *Keylon v. City of Albuquerque,* 535 F.3d 1210, 1216 (10th Cir.2008)). However, when the defendant claims to have had probable cause based on a state criminal statute, "the precise scope of that right uniquely depends on the contours of a state's substantive criminal law." *Id.* at 1300-01. As to the interpretation of state law, courts look to the statute itself, which may be unambiguous, in addition to state court interpretation from the highest court of that state. *Id.* at 1301. *See A.M.*, 830 F.3d 1143 (considering whether the "plain terms" of state statute would have given a reasonable law-enforcement officer in defendant officer's shoes fair warning that if he arrested § 1983 plaintiff under that statute the officer would be violating plaintiff's Fourth Amendment right to be free from arrest lacking probable cause). The salient question is whether the state of the law at the time of the incident gave the officer "fair warning" that his alleged treatment of the plaintiff was unconstitutional. *See Hope v. Pelzer,* 536 U.S. 730, 741 (2002).

9

The Court concludes that it was clearly established in the Tenth Circuit in September 2022 that an officer must have arguable probable cause to arrest, and Deputy Bivens had fair warning of that rule. The Court further finds that the statute and the Oklahoma Uniform Jury Instructions themselves make it unambiguous that Plaintiff's alleged comment to Deputy Bivens that he "shoulda" used a 2x4 on Minor was not a "threat" of future violence against Minor, considering all alleged facts and circumstances when the comment was made. The Oklahoma Uniform Jury Instructions are issued by the Oklahoma Court of Criminal Appeals, which is the highest state appeals court interpreting criminal law in Oklahoma. The Instructions, in conjunction with the statutory elements, provide clear interpretive guidance to a reasonable law officer in Deputy Bivens' position, such that a reasonable law officer would understand that Plaintiff's comment did not provide "arguable probable cause" for arrest under § 1378(B) or any other criminal statute. Although Deputy Bivens argues that Plaintiff has not pointed to any case law directly on point construing § 1378(B), the Court finds the statute and Instructions are unambiguous authority demonstrating the contours of the Oklahoma statute. Therefore, the Court finds no case law is necessary in this specific case.

Deputy Bivens' motion to dismiss this claim for wrongful arrest is denied.

**V.      Excessive Force – Grabbing/Slamming**

The Court holds: (1) Plaintiff's allegations make out a violation of Plaintiff's constitutional right to be free from excessive force; and (2) that right was clearly established at the time of the alleged violation.

    **A.      Constitutional Violation**

In analyzing the excessive force claim, the Court must consider the force Deputy Bivens used in arresting Plaintiff "against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case." *Cortez*, 478 F.3d at 1126. For this purpose, the

Court does not rely on its findings regarding the unlawful arrest claim, as the Tenth Circuit has clarified that the two inquiries are separate and independent. *See id.* at 1127 (rejecting notion that plaintiff's right to recover on excessive force claim is dependent on the outcome of unlawful seizure claim).

In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court laid out the parameters for analyzing whether force used in effecting an arrest is excessive under the Fourth Amendment. Such claims of excessive force under § 1983 are evaluated using an "objective reasonableness" standard. *Id.* at 399. This analysis is fact-specific, requiring the evaluating court to consider (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396. The Court in *Graham* further explained:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396-97 (internal citations omitted).

Based on the allegations in the Complaint, the *Graham* factors weigh heavily in Plaintiff's favor. Regarding the first factor, the Complaint alleges that Plaintiff was suspected of committing the crime of Threatening an Act of Violence. This crime is a misdemeanor and carries a maximum sentence of imprisonment of six months. This misdemeanor is not considered a "severe" crime for purposes of an excessive force analysis. *See Lee v. Tucker*, 904 F.3d 1145, 1149 (10th Cir. 2018) (stating that "we have held that the first *Graham* factor may weigh against the use of significant force if the crime at issue is a misdemeanor") (collecting cases). *Cf. Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1170 (10th Cir. 2021) (explaining that first *Graham* factor weighs

against plaintiff "when the crime at issue is a felony, irrespective of whether that felony is violent or nonviolent").[5] Regarding the second *Graham* factor, Plaintiff posed no immediate threat to Deputy Bivens or others, as he was seated in his truck and cooperating with law enforcement. Minor was some distance away from Plaintiff, requiring Deputy Bivens to go back and forth between Plaintiff and Minor to interact with each of them separately. As for the third *Graham* factor, Plaintiff did not resist arrest when Deputy Bivens told him he was under arrest and to exit his truck, and Plaintiff did not attempt to flee.

Under these alleged circumstances, an objectively reasonable officer would not have been justified in employing *any* physical force to effect Plaintiff's arrest for the non-severe misdemeanor crime of Threatening an Act of Violence. *See Davis v. Clifford*, 825 F.3d 1131, 1137 (10th Cir. 2016) (favorably discussing out-of-circuit authority for the proposition that, "when arrestees had not committed a serious crime, posed no immediate threat, and did not actively resist arrest, 'the officers were not justified in using *any* force, and a reasonable officer thus would have recognized that the force used was excessive'") (quoting *Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998)); *Morris v. Noe*, 672 F.3d 1185, 1198 (10th Cir. 2012) (same). *See also Cortez*, 478 F.3d at 1128 (holding that, where arrest was for violent felony, use of a "small amount of force," like grabbing plaintiff and placing him in the patrol car, was permissible under Fourth Amendment in effecting plaintiff's arrest). Plaintiff alleges Deputy Bivens forcefully grabbed him and slammed him against his truck bed, using sufficient force to "knock the wind" out of Plaintiff. The force Deputy Bivens allegedly employed would have been excessive, because Plaintiff was being arrested for a non-severe misdemeanor crime, did not pose an immediate threat

---

[5] As explained above, the docket sheet creates confusion as to whether Plaintiff was arrested for a felony or misdemeanor. However, Deputy Bivens does not attempt to show Plaintiff was arrested for a felony. Similarly, Deputy Bivens does not attempt to argue that he was entitled to use the degree of force permitted for felony arrests. Therefore, the Court conducts the excessive force analysis based on the assumption Plaintiff was arrested for a misdemeanor.

to anyone, and was fully cooperative. Under such circumstances, *any* physical force beyond the minimum necessary to effect arrest, would be excessive. *See Davis*, 825 F.3d at 1137; *Morris*, 672 F.3d at 1198.

Deputy Bivens argues that the force used against Plaintiff in grabbing and slamming him against his truck was no more than a "small amount of force" that is permissible in effecting an arrest. *See Cortez*, 478 F.3d at 1128. The Court disagrees that the alleged use of force to effectuate Plaintiff's arrest was "small" under the circumstances. Plaintiff alleges he was compliant and cooperative, and he voluntarily stepped out of his vehicle when under arrest for a misdemeanor. Yet Deputy Bivens forcefully grabbed Plaintiff and slammed him up against his truck bed, knocking the wind out of Plaintiff. The alleged force Deputy Bivens used was significantly greater than that used in *Cortez* (grabbing suspect and placing him in patrol car), and Deputy Bivens was arresting Plaintiff for a misdemeanor rather than a violent felony as in *Cortez*. *Cortez* is therefore unhelpful to Deputy Bivens.

Plaintiff has alleged sufficient facts to state a plausible claim for a Fourth Amendment violation under the *Graham* factors.

### B.     Clearly Established Right

To meet his burden on this prong, Plaintiff must show the level of force Deputy Bivens used was greater than permitted by clearly established law at the time of the incident. As explained above, for a violation to be "clearly established," "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Morris*, 672 F.3d at 1196 (quotation omitted). The "weight of authority" standard requires something more than "a handful of decisions from courts in other circuits" that have not been "broadly accepted." *Parkhurst v. Lampert*, 339 F. App'x 855, 861 (10th Cir. 2009) (quoting *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th

Cir. 2009)) (quotation marks omitted). While "[t]he need for specificity is especially important in Fourth Amendment excessive force cases," there "need not be a prior case directly on point, so long as there is existing precedent that places the unconstitutionality of the alleged conduct beyond debate." *McCowan v. Morales*, 945 F.3d 1276, 1285 (10th Cir. 2019) (cleaned up). The Tenth Circuit has adopted a "sliding scale" approach to excessive force cases: "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Morris*, 672 F.3d at 1196 (quotation omitted).

To meet the "clearly established" prong, Plaintiff points to a published case from the Eleventh Circuit: *Thornton v. City of Macon*, 132 F.3d 1395 (11th Cir. 1998). In *Thornton*, one of the plaintiffs was slammed against the hood of a car while being arrested for felony obstruction of justice. *Id.* at 1399. The court found that the plaintiff had not been suspected of having committed a serious crime, did not pose an immediate threat to anyone, and did not actively resist arrest. *Id.* The court held that, "[u]nder the circumstances, the officers were not justified in using *any* force, and a reasonable officer thus would have recognized that the force used was excessive." *Id.*

The Court concludes that the principle outlined in *Thornton* was also clearly established in the Tenth Circuit in September 2022. The Tenth Circuit has cited *Thornton* favorably in two published opinions on excessive force: *Davis v. Clifford*, 825 F.3d 1131, 1137 (10th Cir. 2016), and *Morris v. Noe*, 672 F.3d 1185, 1198 (10th Cir. 2012). In both opinions, the Tenth Circuit cited *Thornton* as a "see also" citation for its holding that, "when arrestees had not committed a serious crime, posed no immediate threat, and did not actively resist arrest, 'the officers were not justified in using *any* force, and a reasonable officer thus would have recognized that the force used was excessive.'" *Davis* and *Morris* both involved plaintiffs who were accused of misdemeanor crimes, posed no immediate threat, and did not actively resist arrest, and the court found the level of force

14

allegedly used by law enforcement against them was excessive. While the level of force used in *Davis* and *Morris* was greater than presented here, the Tenth Circuit panels in both cases endorse *Thornton's* holding that no amount of force is authorized when an arrestee is compliant, non-threatening, and not suspected of a serious crime.[6] The Tenth Circuit's repeated endorsement of *Thornton*'s holding would put a reasonable officer on notice that *no* amount of force to effect arrest would be authorized in the circumstances presented in the Complaint. The alleged facts fall squarely within the general rule endorsed by the Tenth Circuit under *Davis* and *Morris*. *See Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (explaining that "clearly established" precedent "is considered on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue") (cleaned up).

Deputy Bivens cites a District of Utah case in support of his contention that the amount of force he used did not violate clearly established law. *See Blackmore v. Carlson*, 574 F. Supp. 3d 1012 (D. Utah 2021). In *Blackmore*, the plaintiff was pushed against a wall, roughly handcuffed, and taken to a police vehicle in the course of arrest for misdemeanor offenses. *Id.* at 1051. After examining Tenth Circuit authority on excessive force, the court concluded that "it was not clearly established that at the time of the Incident that pushing a person against a wall, handcuffing that person, and taking them to a police vehicle constitutes excessive force in violation of the Fourth Amendment." *Id.* While the Court acknowledges some similarity to facts alleged here, *Blackmore*'s holding appears contrary to established Tenth Circuit authority explained above. The court in *Blackmore* did not address or cite *Davis*, *Morris*, or *Thornton*, which endorse the finding

---

[6] In *Davis*, in executing a traffic stop for driving with a suspended license, the officers blocked in the plaintiff's car, and when she did not immediately exit the vehicle, the officer broke the driver's side window, dragged the plaintiff out of the window by her hair and arms, pinned her face-down on the broken glass, and handcuffed her. 825 F.3d at 1134. In *Morris*, the plaintiff was a possible misdemeanant who posed no threat and did not resist or flee, and officers forcefully threw him to the ground to arrest him. 672 F.3d at 1198.

15

that an officer is not justified in using *any* force in effecting an arrest for misdemeanor or "non-serious" offenses where the arrestee is compliant, non-threatening, and not attempting to flee. Therefore, the Court does not find *Blackmore* persuasive.[7]

Plaintiff's allegations state a plausible claim that Deputy Bivens' use of force was objectively unreasonable in light of the facts and circumstances that confronted him. Further, Plaintiff's allegations that he was grabbed, slammed against the vehicle, and had the wind knocked out of him are sufficiently specific to determine the reasonableness of Deputy Bivens' conduct for this purpose. *Cf. Holmstrom v. Bd. of Cnty. Commissioners for Cnty. of Chaves*, 181 F. Supp. 3d 862, 877 (D.N.M. 2016) (finding allegations that unspecified officers "seized" and "manhandled" plaintiff were insufficiently detailed to withstand dismissal).

Deputy Bivens' motion to dismiss the excessive force claim related to grabbing and slamming Plaintiff in effecting his arrest is denied.

## VI. Excessive Force - Handcuffing

Regarding Plaintiff's allegations of excessive force related to handcuffing, Plaintiff has abandoned this claim. Plaintiff did not respond to Deputy Bivens' arguments on this issue in any manner, and Deputy Bivens' arguments on the issue of handcuffing are deemed confessed. *See*

---

[7] The Court is also not persuaded by other cases cited by Deputy Bivens, in which courts found no excessive force from pushing a suspect against a wall or car in effecting arrest. *See Segura v. Jones*, 259 F. App'x 95, 103-04 (10th Cir. 2007); *Bey v. Reed*, No. 18-CV-1422-KLM, 2019 WL 2515464, at *6 (D. Colo. June 18, 2019). In *Segura*, the court found that the plaintiff's de minimis injury resulting from the officer's pushing her face against a wall entitled the officer to qualified immunity. However, the Tenth Circuit has since clarified that the de minimis injury requirement applies only in handcuffing cases. *See United States v. Rodella*, 804 F.3d 1317, 1327-29 (10th Cir. 2015). Therefore, *Segura's* reasoning no longer holds. In *Bey*, the plaintiff was uncooperative with law enforcement shortly before arrest, which justified a greater use of force. Here, Plaintiff alleges he was cooperative and compliant with law enforcement's instructions at all times prior to and during his arrest. Therefore, *Bey* is also not instructive here.

*Brown v. K-MAC Enters.*, 897 F. Supp. 2d 1098, 1109 (N.D. Okla. 2012) (finding arguments and authority in motion to dismiss deemed confessed when plaintiff did not address arguments at all).[8]

Deputy Bivens' motion to dismiss the excessive force claim related to handcuffing is granted.

## VII. Conclusion

For the reasons detailed above, Defendant Adam Bivens' Motion to Dismiss (ECF No. 14), which is based on qualified immunity, is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to the excessive force claim based on handcuffing. The motion is **DENIED** as to Plaintiff's unlawful arrest claim and Plaintiff's excessive force claim based on forceful grabbing/slamming.

The matter is set for a status conference on May 14, 2025, at 10:00 a.m., to discuss how best to proceed in light of this ruling.

**SO ORDERED** this 25th day of April, 2025.

JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[8] In any event, the Court would grant qualified immunity to Deputy Bivens on this issue, as Plaintiff failed to allege any serious injury caused by handcuffing. To sustain a claim of excessive force based on handcuffing, the Tenth Circuit requires "*some actual injury* caused by the unreasonable seizure *that is not de minimis*, be it physical or emotional." *Fisher v. City of Las Cruces*, 584 F.3d 888, 897 (10th Cir. 2009) (quotation omitted). Plaintiff alleges that Deputy Bivens applied handcuffs on him so tightly it caused abrasions and scars on Plaintiff's wrists. As a matter of law, such injuries would not qualify as more than de minimis. *See, e.g., Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (finding plaintiff's handcuff injury of "superficial abrasions" and alleged numbness in wrist and forearm were de minimis); *Cortez*, 478 F.3d at 1129 (finding handcuff injury of red marks that were visible for days afterward was de minimis).